IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RACHEL C.,

                              Plaintiff,

           v.                                        Civil Action No.
                                                     3:19-CV-0954 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                              Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW GROUP     PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        MICHAEL L. HENRY, ESQ.
625 JFK Building              HUGH DUN RAPPAPORT, ESQ.
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

---

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, was ineligible for the benefits for which she applied. Her claim having been remanded to the agency for further proceedings, pursuant to a decision by the Second Circuit Court of Appeals, plaintiff now applies for an award of attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Acting Commissioner opposes plaintiff's motion on the grounds that the positions taken by her in this litigation were substantially justified. For the reasons set forth below, I find that the Acting Commissioner's positions in this case were substantially justified, and therefore will deny plaintiff's motion for fees pursuant to the EAJA.

I.     BACKGROUND

Plaintiff commenced this action on August 5, 2019. In her complaint, plaintiff challenged a determination of the Acting Commissioner, based upon a finding by an administrative law judge ("ALJ") that she was not disabled at the relevant times, and accordingly is not entitled to receive the benefits for which she applied. In accordance with the court's protocol, as set forth in General Order No. 18, once issue was joined, the matter was

2

considered as if cross-motions for judgment on the pleadings had been filed pursuant to Ruled 12(c) of the Federal Rules of Civil Procedure.

After carefully and thoroughly reviewing the parties' submissions and the record before the court, on September 9, 2020, I issued a decision finding that the ALJ's decision applied the proper legal principles and was supported by substantial evidence.  Dkt. No. 21.  Plaintiff appealed the resulting judgment to the Second Circuit Court of Appeals, a panel of which vacated my decision, finding in a two-to-one decision that the ALJ erred in a number of respects, and remanded with instructions to return the case to agency for further proceedings.  *Colgan v. Kijakazi*, 22 F.4th 353 (2nd Cir. 2022).  In compliance with that order, on February 25, 2022, I ordered that the Commissioner's determination be vacated and the matter remanded for further consideration.  Dkt. Nos. 27, 28.

On March 22, 2022, plaintiff, through her attorney, filed a motion seeking recovery of attorney's fees pursuant to the EAJA.  Dkt. No. 30. Plaintiff also concurrently filed a motion for fees pursuant to the EAJA with the Second Circuit, in response to which the Acting Commissioner moved before that court to remand consideration of the attorney's fees application to this court.  The Second Circuit granted the Acting Commissioner's motion on April 8, 2022, and returned the case to me for an initial

3

determination of plaintiff's entitlement to attorney's fees.  Dkt. No. 32.  Due

to the circumstances regarding plaintiff's dual applications for attorney's

fees, I granted the Acting Commissioner additional time to submit a

substantive response to plaintiff's motion.  Dkt. No. 33.  The Acting

Commissioner responded, and plaintiff subsequently filed, without

permission, a reply to that response.  Dkt. Nos. 34, 35.

III.   DISCUSSION

The EAJA provides, in relevant part, as follows:

> [A] court shall award to a prevailing party . . .
> fees and other expenses . . . incurred by that
> party in a civil action, including proceedings for
> judicial review of agency action . . . brought by
> or against the United States in any court having
> jurisdiction of that action, unless the court finds
> that the position of the United States was
> substantially    justified    or    that    special
> circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  To qualify for recovery under the EAJA, a

plaintiff must demonstrate that (1) he is a prevailing party; (2) he is eligible

to receive an award; and (3) the position of the United States was not

substantially justified.  28 U.S.C. § 2412(d)(1)(B); *see also Smith v. Astrue,*

10-CV-0053, 2012 WL 3683538, at *1 (N.D.N.Y. Aug. 24, 2012) (Suddaby,

J.); *Coughlin v. Astrue*, 06-CV-0497, 2009 WL 3165744, at *1 (N.D.N.Y.

Sept. 28, 2009) (Mordue, J.).  In addition, he or she must submit an

itemized statement from the attorney appearing on his or her behalf

detailing the time expended and the rates at which the fee request is

calculated.  *Id.*  In the event that a plaintiff satisfies these criteria, his EAJA

request may nonetheless be denied upon a finding of special

circumstances making an award unjust.  28 U.S.C. § 2412(d)(1)(A); *See*

*also Coughlin*, 2009 WL 3165744, at *3.

     As this court has previously stated,

> The issue of the meaning of the term "substantially justified" for purposes of the EAJA, was before the Supreme Court in the seminal case of *Pierce v. Underwood*, 487 U.S. 552 (1988).  In *Pierce*, the Court settled on a test of reasonableness, concluding that the phrase should be interpreted as meaning "justified to a degree that could satisfy a reasonable person."  *Id.* at 565; *accord, Green v. Bowen*, 877 F.2d 204, 207 (2d Cir. 1989).  In accordance with *Pierce*, the Second Circuit has further construed the term "substantially justified" to mean as "having a 'reasonable basis in both law and in fact.'"  *Dunn*, 169 F.3d at 786 (quoting *Pierce*, 487 U.S. at 565); *see Ericksson*, 557 F.3d at 81; see also HR No. 96-1418, 96th Cong 2d Sess (1980).

*Jenny R. R. v. Comm'r of Soc. Sec.*, 18-CV-1451, 2020 WL 4034839, at *2

(N.D.N.Y. July 17, 2020) (Peebles, M.J.); *see also Cohen v. Bowen*, 837

F.2d 582, 586 (2d Cir. 1988) ("This circuit repeatedly interpreted the

'substantially justified' standard to be essentially a standard of

reasonableness.") (additional citation omitted).

"When analyzing the government's position, both the underlying agency determination affecting the party and the government's litigation strategy in defense of the determination are considered." *Miles ex rel. J.M. v. Astrue*, 502 F. App'x 59, 60 (2d Cir. 2012) (summary order) (citing 28 U.S.C. § 2412(d)(2)(D), *see Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir. 1989)); *see also Bartha v. Comm'r of Soc. Sec*., No. 18-CV-0168, 2020 WL 2315578, at *1 (W.D.N.Y. May 11, 2020) ("The Commissioner must show that his position was substantially justified as to the issue upon which this Court remanded.") (citing *Maxey v. Chater*, No. 93-CV-606, 1996 WL 492906, at *3) (N.D.N.Y. Aug. 28, 1996) ("The Commissioner cannot prevail by arguing that she was substantially justified in some of the positions she took if she was not substantially justified on the issue—failure to develop the record—that caused [the district court] to remand this case.").  Courts have held that the substantially justified standard "[i]s intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous.  At the same time, the language of the section protects the government when its case, though not prevailing, has a reasonable basis in law and fact." *Knapp v. Astrue*, 10-CV-1218, 2011 WL 4916515, at *1-2 (N.D.N.Y. Oct. 17, 2011) (quoting *Cohen*, 837 F.2d at 585).

The Commissioner bears the burden of demonstrating that her positions are substantially justified. *See, e.g., Hale v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007).  "[A] 'strong showing' is required to satisfy this burden." *Walker v. Astrue*, 04-CV-0891, 2008 WL 4693354, at \*2 (N.D.N.Y. Oct. 23, 2008) (quoting *Envtl. Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2d Cir. 1983); *see also Rosado v. Bowen*, 823 F.2d 40, 42 (2d Cir. 1987)). "The legislative history of the EAJA indicates that the substantial justification standard 'should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case.'"  *Davis v. Colvin*, 11-CV-0658, 2013 WL 6506466, at \*1 (N.D.N.Y. Dec. 11, 2013) (quoting *Cohen*, 837 F.2d at 585 (citations and internal quotation marks omitted)).  "The Commissioner cannot prevail by arguing that he was substantially justified in some of the positions he took if he was not substantially justified on all the positions." *Id*. (citing *Maxey v. Chater*, 93-CV-0606, 1996 WL 492906, at \*3 (N.D.N.Y. 1996) (additional citation omitted)).

After a careful consideration of all of the relevant documents before me, including the ALJ's decision, the administrative record, the parties' briefing on both the underlying substantive motion and the EAJA motion, and the Second Circuit's decision, I find that the Acting Commissioner's

positions in this litigation regarding the issues on which the Second Circuit found remand warranted were substantially justified because they have a reasonable basis in law and fact.

In its majority opinion, the Second Circuit found remand was warranted on the basis of four main points: (1) the fact that an opinion is rendered on a checkbox form is, by itself, not a valid reason for discounting a treating physician's opinion, and the assessment should instead be based on "whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert," and Dr. Ward's checkbox opinion in this case "was supported by voluminous treatment notes gathered over the course of nearly three years of clinical treatment"; (2) the ALJ erred in failing to afford controlling weight to the opinion from treating physician Dr. Ward because the reasons provided for affording little weight to that opinion were not supported by substantial evidence; (3) the opinion from state agency psychologist Dr. Fassler could not constitute substantial evidence to undermine Dr. Ward's opinion because it was "based on a single consultative cognitive assessment," Dr. Fassler is not a physician, his opinion is unsupported by substantial evidence, and his opinion that plaintiff can perform unskilled work is simply too vague to constitute substantial evidence; and (4) there was no other substantial evidence in the

8

record that raises a genuine conflict with or undermines Dr. Ward's opinion.

      a.   <u>Checkbox Form</u>

First, both the ALJ's and the Acting Commissioner's positions in this litigation were reasonable in that neither actually advanced the position that Dr. Ward's opinion should be discounted solely because it was rendered on a checkbox form.  In remanding the case, the Second Circuit itself stated that, although a treating physician's medical opinion cannot be discounted "based on the naked fact" that it was provided in a checkbox form, whether the source provided explanation and whether that opinion is consistent with the source's own treatment notes and supported by the substantial medical evidence are relevant considerations.  *Colgan*, 22 F.4th at 361-62.  In affording Dr. Ward's opinion little weight, the ALJ stated that "the opinion lacks supportive rationale and a basis in the treatment record," and that it "is in a check-box form using language prepared by the representative, and is not well-explained," specifically noting that "[a]side from a brief list of diagnoses, the only information in the form volunteered by the doctor is a list of medications, a side effect of fatigue prompted by the form, and another side effect of impaired concentration," which sparse explanations the ALJ nonetheless found "not consistent with Dr. Ward's treatment records."  AT 19-20.  The ALJ therefore did not rely on "the naked fact" that

9

the opinion was on a checkbox form, but rather on the fact that the

limitations or cursory explanations expressed therein were not supported

by the record evidence.  Although the Acting Commissioner did argue that

opinions provided on checkbox forms are "weak evidence at best" based

on caselaw, she further argued that the ALJ properly relied on the finding

that the boxes checked by Dr. Ward were not supported by the record

evidence.  Dkt. No. 14, at 15-23.  Because the ALJ's rationale and the

Acting Commissioner's arguments are not actually contradictory to the

Second Circuit's ultimate statement of the law regarding checkbox forms, I

find that the Acting Commissioner was clearly substantially justified

regarding her position on this issue.

> b.    Dr. Ward's Opinion

The primary basis for the Second Circuit's remand revolved around

perceived errors in the assessment of Dr. Ward's opinion.  Specifically, the

two-judge majority of the Second Circuit panel found not only that the ALJ

failed to provide good reasons for discounting Dr. Ward's opinion, but

indeed should have afforded his opinion controlling weight because it is

well-supported by medically acceptable clinical and laboratory diagnostic

techniques and not inconsistent with the other substantial evidence in the

case record.  *Colgan*, 22 F.4th at 360-63.  The majority found that the ALJ's

two primary explanations – that the opinion was not consistent with his treatment records and that it was not supported by other substantial evidence in the administrative record – were both insufficient to support the ALJ's findings because they were based on an erroneous assessment of the evidence.

I find that the Acting Commissioner had a reasonable basis in both law and fact for asserting that the ALJ did not commit any error in failing to afford controlling weight to the opinion of Dr. Ward.  In doing so, I emphasize that the fact that the Second Circuit ultimately concluded that the ALJ's rationale was unsupported by the evidence does not mean that the Acting Commissioner's position was unreasonable.  Indeed, Judge Steven Menashi, in dissent, concluded based on a review of the same evidence that the ALJ's choice to afford little weight to Dr. Ward's opinion was supported by substantial evidence.  *Colgan*, 22 F.4th at 365-68. Although not dispositive, the fact that one circuit judge on the three-judge panel, as well as this court, reached an opposite conclusion to that of the majority provides strong support for the reasonableness of the Acting Commissioner's position.

The majority found that the ALJ erroneously relied on "internal inconsistencies" between Dr. Ward's notation of side effects like fatigue

11

and reduced concentration on his opinion form and his treatment notes because a reliance on "one-time snapshots" or "a few isolated instances of improvement" is contrary to the prevailing case law.  *Colgan*, 22 F.4th at 362.  However, it was not unreasonable for the Acting Commissioner to assert that the ALJ's reliance on such facts was proper.  As Judge Menashi notes, *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019), the case on which the majority primarily relies for this point, involved error in relying on the opinion of a one-time consultative examiner that did not accurately account for the documented fluctuations of mental functioning throughout the relevant period of time.  *Colgan*, 22 F.4th at 362, 367.  In this case, by contrast, the ALJ did not reject Dr. Ward's opinion based on a "one time snapshot" but rather based on notations throughout Dr. Ward's own treatment notes that contradicted his opinions regarding the ongoing presence of fatigue or diminished concentration.  Notably, although the records from Dr. Ward and others at her practice show that plaintiff was observed to have impaired or limited concentration on examination during 2016 through April 2017, the records from after that time do not include any notations in the mental status examinations of concentration difficulties. *Compare* AT 784, 790, 798, 801, 805 *with* AT 808-09, 814, 818, 822, 826, 830-31, 834-35.  As to fatigue, the ALJ noted that Dr. Ward documented

12

that plaintiff reported feeling "initially more fatigued" after increasing her dose of gabapentin in November of 2016, and that she again reported fatigue to a nurse practitioner in July of 2017 in the context of changing her dose of Adderall.  AT 788, 810.  These appear to be the only documentations of fatigue within the notes from Dr. Ward or her practice. Although the majority deemed the ALJ's rejection of Dr. Ward's opinion that plaintiff suffers from ongoing fatigue as being an improper reliance on "isolated instances of improvement" or "one-time snapshots," the ALJ's and Acting Commissioner's positions to the contrary remain reasonable, given that the two notations of fatigue appear to reasonably represent isolated instances of worsening far more than they represent plaintiff's typical presentation or symptomology.

As to the position that the ALJ's decision to afford little weight to Dr. Ward's opinion was supported by substantial evidence in the record, I also find that such position was reasonable in both law and fact in this case. The Second Circuit majority found that the ALJ's reliance on the statement in Dr. Ward's treatment note that plaintiff's headaches were short-lived if she could remove herself from her trigger was erroneous because that same treatment note also indicated that her headaches could last all day if she is unable to rest, and thus the full context of that note supports Dr.

Ward's opinion about off-task and absence times. *Colgan*, 22 F.4th at 362-63.  However, the Second Circuit majority's finding rests on the premises that (1) Dr. Ward's opinion is indicative of plaintiff's functioning when she would be exposed to headache triggers and (2) that plaintiff cannot avoid such triggers in the workplace.  The ALJ discussed in some detail the various triggers noted throughout Dr. Ward's treatment records, and the RFC clearly attempts to allow for avoidance of noted triggers such as physical exertion, cognitive exertion, and exposure to stress and light.  The Acting Commissioner, in opposing plaintiff's motion on the merits, specifically argued that the RFC finding accommodates all of the documented triggers such that plaintiff would not experience headaches causing restrictions at the level contemplated by Dr. Ward's opinion.  Dkt. No. 14, at 16.  Therefore, although the Second Circuit majority ultimately found that the ALJ did not consider the relevant statement about decreased headaches with avoidance of triggers in context and made no effort to reconcile the apparent inconsistency within Dr. Ward's treatment note, I find that the positions of the ALJ and the Acting Commissioner were nonetheless substantially justified because it was reasonable for the ALJ and the Acting Commissioner to believe that the ALJ's discussion of headache triggers and the RFC adequately addressed those issues.

The ALJ lastly discounted Dr. Ward's opinion in part because, even when plaintiff was being exposed to the trigger of stress related to a divorce and experiencing headaches, she was able to care for her two children, drive to appointments, prepare food, and wash dishes.  AT 20.  In finding this rationale erroneous, the Second Circuit majority relied almost exclusively on *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), particularly citing to passages in that case that "a claimant need not be an invalid to be found disabled" and that "it would be a shame" to hold a claimant's "endurance" to "pursue important goals such as attending church and helping his wife on occasion go shopping for their family" against him "unless his conduct truly showed that he is capable of working."  *Colgan*, 22 F.4th at 363.  However, the activities relied on by the ALJ in this case, including daily care for two young children, are vastly different from the occasional activities mentioned in *Balsamo*, and reflect more on plaintiff's ability to sustain concentration or attendance on a consistent basis than do occasionally going to church or occasionally shopping.  Notably, somewhat recent summary orders from the Second Circuit affirm that such daily activities are a proper consideration and can be part of the rationale for affording less weight to a treating physician. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding decision not to afford

controlling weight to treating physician's opinion based on evidence of improved mood and the claimant's "ability to independently manage reported activities of daily life, including tasks such as cooking, cleaning, self-care, banking, shopping and driving without assistance" was proper); *Fox v. Colvin*, 589 F. App'x 35, 36 (2015) (affirming ALJ's decision not to afford controlling weight to treating physician's opinion where the ALJ explained the limitations were inconsistent with the claimant's reported activities of daily living and other evidence in the record).  Although summary orders are not binding precedent, they certainly factor into the analysis of what the Acting Commissioner would believe to constitute a reasonable legal position.  Additionally, this is not a case in which the ALJ relied solely on plaintiff's reported daily activities to discount a treating physician's opinion; he provided multiple other reasons as was already discussed above.  *C.f. Gentles v. Comm'r of Soc. Sec.*, 848 F. App'x 56, 57 (2d Cir. 2021) (finding error where the ALJ rejected the treating physician's opinion based only on the plaintiff's own reports of daily activities). Because the activities relied on by the ALJ were activities that appear to represent plaintiff's daily functioning as opposed to activities she does only occasionally, I find that there was a reasonable basis in both law and fact for the Acting Commissioner's position on this issue.

c. Dr. Fassler's Opinion

The Second Circuit majority's decision additionally relies on the finding that Dr. Fassler's opinion cannot constitute substantial evidence to undermine Dr. Ward's opinion.  Yet, there were multiple summary orders issued by the Second Circuit prior to the time the Acting Commissioner was defending this litigation standing for the proposition that an ALJ is not required to rely on a medical opinion in order for his or her findings to be supported by substantial evidence so long as the record contains sufficient evidence from which an ALJ can assess the RFC.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order). One of those cases, *Monroe*, involved a situation in which the ALJ discounted the opinion from the treating physician and formulated the RFC instead based on that physician's treatment notes, a factual posture that is very similar to the circumstances here.  *Monroe*, 676 F. App'x at 8-9.   The ALJ additionally relied, at least in part, on the opinions of numerous other physicians, none of whom opined greater restrictions related to a need to be off-task or absent from work.  AT 20-22.

Notably, although the ALJ did afford weight to the opinion of Dr. Fassler, it is clear that the ALJ did not merely adopt Dr. Fassler's opinion

that limited plaintiff to unskilled work.  Rather, the RFC contains significant additional mental limitations, limitations which, when compared to the reports of headaches and headache triggers contained throughout Dr. Ward's treatment records, appear designed to minimize or eliminate plaintiff's exposure to situations that would be likely to trigger her headaches.  Under the circumstances, I find that the positions of both the ALJ and the Acting Commissioner were reasonable in both fact and law regarding relying in part on the opinion of Dr. Fassler, but also as to a reliance on a detailed consideration of the contents of Dr. Ward's treatment notes particularly related to plaintiff's headaches.

IV.    <u>SUMMARY AND ORDER</u>

Based on the foregoing, I find that the Agency's positions on the issues on which the Second Circuit majority ordered remand have a reasonable basis in both law and fact and therefore those positions were substantially justified.  Simply put, it is difficult to fathom how a litigant can argue that a position of the government which has been endorsed by two judicial officers, including a Circuit Judge, is unreasonable and thus not substantially justified.  Accordingly, it is hereby

ORDERED that plaintiff's motion for attorney's fees pursuant to the EAJA (Dkt. No. 30) is DENIED.

18

Dated:      July 8, 2022
            Syracuse, NY                    DAVID E. PEEBLES
                                            U.S. Magistrate Judge